IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

JOHN E. SROKA, et al.,          *

    Plaintiffs,              *

    v.                       *   CIVIL NO.: WDQ-13-3281

UNION CARBIDE CORP.,             *
    et al.,
                             *
    Defendants.              *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

John E. Sroka, now deceased, and his wife, Constance B. Sroka,[1] (the "Plaintiffs") sued Hopeman Brothers, Inc. ("Hopeman"), Lofton Corp., and Wayne Manufacturing Corp. (collectively, the "Defendants"), and others,[2] in an asbestos

---

[1] On June 25, 2013, Sroka's complaint was amended to include Mrs. Sroka, individually and as personal representative of the Estate of John E. Sroka, and Sroka's surviving children, Laura Leigh Schulman and Gregory Paul Sroka, as plaintiffs. ECF No. 90-3.

[2] The Plaintiffs also sued Union Carbide Corporation; John Crane-Houdaille, Inc.; Owens-Illinois Glass Company; E.L. Stebbing & Co., Inc.; Hampshire Industries, Inc.; Universal Refractories Company; J.H. France Refractories Company; The Goodyear Tire & Rubber Company; MCIC, Inc.; CBS Corporation; General Electric Company; Metropolitan Life Insurance Company; A.W. Chesterton Company; Certainteed Corporation; Kaiser Gypsum Company, Inc.; International Paper Company; Bayer Cropscience, Inc.; Georgia-Pacific, LLC; Cooper Industries, Inc.; Pfizer Inc.; Schneider Electric USA, Inc.; The Wallace & Gale Asbestos Settlement Trust; Conwed Corporation; Foster Wheeler LLC; Selby, Battersby & Company; Greene, Tweed & Company; Ferro Engineering Division of On Marine Services Company; Foseco, Inc.; Mallinckrodt, Inc.; Crown, Cork & Seal Company, Inc.; General Refractories Company; Koppers Company, Inc.; Alfa Laval, Inc.; Air and Liquid Systems

product liability action in the Circuit Court for Baltimore City. ECF No. 2. The Defendants removed the suit to this Court. ECF No. 1. Pending is the Plaintiffs' motion to remand. ECF No. 90. No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the following reasons, the motion will be granted.

I. Background

    A.   Facts[3]

From 1957 through the 1990s, Sroka worked as a union steamfitter and pipefitter at various shipyard sites throughout Baltimore, Maryland. ECF No. 90-1 at 1. From 1964 to 1997, Sroka worked for the U.S. Coast Guard at the Curtis Bay Yard, in Baltimore. ECF No. 1 at 2; ECF No. 5 at 4.[4] Sroka allegedly

---

Corporation; Copes-Vulcan, Inc.; Crane Company; Goulds Pumps (IPG), Inc.; I.M.O. Industries, Inc.; Ingersoll-Rand Company; The Nash Engineering Company; Viking Pump; Warren Pumps, Inc.; The William Powell Company; The Yarway Corporation; Siemens Demag Delaval Turbomachinery, Inc.; and BW/IP International, Inc. (collectively, the "non-removing defendants"). ECF No. 2.

[3] The facts are from the complaint, ECF No. 2, the notice of removal, ECF No. 1, Plaintiffs' answers to interrogatories, ECF No. 5, the motion and its exhibits, ECF No. 90, and the Defendants' opposition to the motion and its exhibits, ECF No. 94. Facts are also taken from Hopeman's Opposition to Plaintiff's Motion for Remand in *Hubbard, et al. v. Owens-Illinois Glass Co., et al.*, Civil No. JFM-04-329 (D. Md. 2004), which was incorporated by reference into the Notice of Removal. *See* ECF Nos. 1 at 4; 8. The Defendants did not incorporate exhibits attached to the Opposition. *See id.*

[4] From 1957 to 1958, and 1962 to 1965, Sroka worked for the privately-owned Bethlehem Steel Key Highway plant in Baltimore, Maryland. ECF Nos. 5 at 4; 90-1 at 2 n. 1. In 1963 and 1965,

2

breathed "clouds of visible asbestos dust" when he was exposed to the Defendants' asbestos-containing marinite and micarta panels while working at those shipyard sites. ECF Nos. 2; 90-1 at 2, 4.[5] Sroka alleges that the Defendants' asbestos products lacked warnings. ECF No. 90-1 at 4. On August 24, 2012, Sroka was diagnosed with mesothelioma. ECF No. 2 at 16.[6] On December 8, 2012, Sroka died. ECF No. 90-1 at 2.

Norman W. Lemley, a retired U.S. Coast Guard Reserve Captain, averred that the Coast Guard approved the use of asbestos-containing marinite panels in the early 1930s. ECF No. 94-4 at 3 ("Lemley Affidavit").[7] Lemley further averred that "[f]ire resistant insulation and bulkhead materials [were] required to be approved by the United States Coast Guard" under 46 C.F.R. §§ 164.009, 164.007, and 164.012. ECF No. 94-4 at 2. Marinite was a "standard" component of a ship's interior finish. Id. at 3. Asbestos was a "major component of marinate . . .

---

Sroka worked at the Maryland Shipbuilding and Drydock facility. ECF Nos. 90-1 at 4 n. 2; 90-4 at 4.

[5] Marinite was listed in the 1968 and 1972 Coast Guard equipment list as approved products that "may be used." ECF No. 90-13 at 3,5; see also ECF Nos. 94-5, 94-6.

[6] In 1995, Sroka had been diagnosed with asbestosis. ECF No. 90-1 at 1.

[7] After a fire onboard the SS Morro Castle, the U.S. Senate Commerce Committee convened a comparative fire study involving bulkhead panels made from steel, marinate, and impregnated wood. ECF No. 94-4 at 3. The study found that steel and marinate panels met structural fire integrity requirements. Id.

until the late 70s." *Id.* Shipbuilding specifications included "asbestos composition panels," i.e., marinate. *Id.* at 3-4.

In 1936, the Navy's Bureau of Engineering issued General Specifications for Machinery, which required suppliers to provide "[s]afety precautions" as part of their instruction materials. ECF No. 90-6 at 1, 15. Those specifications "form[ed] part of all machinery contracts, and . . . govern[ed] in all cases unless modified or excepted . . . in each individual case." ECF No. 90-7 at 2.

A 1943 report, titled "Minimum Requirements for Safety and Industrial Health in Contract Shipyards" ("1943 Safety Report"), states that jobs involving asbestos, such as "covering pipes," required the use of respiratory protective equipment. ECF No. 94-7 at 9. The 1943 Safety Report also notes that asbestosis was one of eight "common" industrial diseases, and recommends segregating jobs involving asbestos dust, and that workers receive "[p]eriodic medical examination." *Id.* at 10, 13.

In 1950, Military Specifications replaced the General Specifications for Machinery. ECF No. 90-8 at 2. The Military Specifications required suppliers' instruction books to contain, *inter alia*, safety notices when "special hazards [were] involved." *Id.* at 3. The 1957 and 1961 Military Specifications updates required parts lists to include "emphatics, such as 'NOTE,' 'CAUTION,' and 'WARNING,' . . . as [was] consistent with

real need." ECF Nos. 90-9 at 8; 90-10 at 6. However, "[t]he intent" of the Military Specifications was "to accept the manufacturer's commercial type of manual or one prepared in accordance with . . . commercial practice whenever it is roughly equivalent to the detail requirements" stated in the Military Specifications. ECF No. 90-10 at 2.

From 1955 to 1977, Hopeman supplied products to the Curtis Bay Coast Guard, including asbestos-containing marinate panels. ECF No. 8 at 6.[8] The Coast Guard "identified exactly what product was being purchased," including "as to composition and type," and "size and color." Id. For example, the Coast Guard required Hopeman to provide "panels, marinate-face with micarta color-two sides 'yellow mist' size 8 in. by 48 in. by 96 in. (ten each)." ECF No. 8 at 6-7; 94-2 at 15-16; 95-3. John E. Baker, Hopeman's former Vice President and Secretary, swore that Hopeman's products met Coast Guard and Military Specifications. ECF No. 94-2 at 1-2 ("Baker Affidavit"). Although Hopeman had not performed joiner contracts at Curtis Bay, Hopeman had "provided miscellaneous replacement parts." Id. Attached to

---

[8] In 1956, the Navy promulgated a Uniform Labeling Program ("ULP") governing hazardous industrial chemicals and materials. ECF No. 90-5 at 2. The ULP applied to "materials received from any supply source," but did not apply to "labels to be affixed by the manufacturer," as they were "governed by State and Federal laws and regulations depending on the nature of the material." Id. The ULP noted that "most major manufacturers of chemicals abide by the 'Warning Labels Guide' published by the Manufacturing Chemists' Association. Id.

the Baker Affidavit are documents showing that Hopeman supplied--and invoiced for--parts in accordance with Coast Guard purchase orders for the Curtis Bay shipyard. *Id.* at 3-119.

B.   Procedural History

On November 13, 2012, Sroka filed suit against manufacturers, distributers, suppliers, and installers of asbestos-containing products. ECF No. 2.[9] On November 4, 2013, the Defendants removed the suit to this Court under the federal officer removal statute.[10] ECF No. 1. On July 7, 2014, the Plaintiffs moved to remand. ECF No. 90. On July 23, 2014, the Defendants opposed the motion. ECF No. 94.[11] On August 11, 2014, the Plaintiffs replied. ECF No. 101.

II.  Analysis

A.   Removal Jurisdiction

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing where such action is pending." Under 28

---

[9] *See also supra* note 2 and accompanying text.

[10] 28 U.S.C. § 1442(a)(1)(2012).

[11] On July 24, 2014, a non-removing defendant, Ingersoll-Rand Company, also opposed the motion to remand. ECF No. 95. However, on August 11, 2014, the Court granted a joint consent motion voluntarily dismissing all claims against Ingersoll-Rand Company. ECF No. 102.

U.S.C. § 1442(a)(1), federal officers and their agents have an "independent jurisdictional right" to remove a state civil action or criminal prosecution "for or relating to any act under color of such office" to federal court, "wholly apart" from § 1441.  *Camero v. Kostos,* 253 F. Supp. 331, 335 (D.N.J. 1966) (internal quotation marks omitted).[12]  Unlike removal under § 1441, under § 1442(a) the other defendants need not join in or consent for removal to be proper.  *Joyner v. A.C. & R. Insulation Co.,* CIV. CCB-12-2294, 2013 WL 877125, at *2 n.4 (D. Md. Mar. 7, 2013) (*citing Plourde v. Ferguson,* 519 F. Supp. 14, 16 (D. Md. 1980)).

To qualify for removal under § 1442(a)(1), "the defendant must raise a colorable claim to a federal law defense and establish that there is a causal connection between plaintiffs' claims and acts it performed under color of federal office." *Pack v. AC & S, Inc.,* 857 F. Supp. 26, 28 (D. Md. 1994) (*citing Mesa,* 489 U.S. at 124-25, 129-31, 134-35).  The Defendants bear the burden of proving that removal is proper.  *Md. Stadium Auth. v. Ellerbe Becket, Inc.,* 407 F.3d 255, 260 (4th Cir. 2005). However, the Defendants do not need to prove that its federal immunity defense will succeed to obtain removal.  *Jamison v.*

---

[12] *See also Mesa v. California,* 489 U.S. 121, 136, 109 S. Ct. 959, 968, 103 L. Ed. 2d 99 (1989) ("Section 1442(a) . . . is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant.").

7

*Wiley*, 14 F.3d 222, 238 (4th Cir. 1994). The Supreme Court has cautioned against a "narrow, grudging" interpretation of the federal officer removal statute, explaining that, "the validity of the defense of official immunity [should be] tried in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S. Ct. 1813, 23 L.Ed.2d 396 (1969); *see also Kolibash v. Comm. on Legal Ethics of W. Virginia Bar*, 872 F.2d 571, 576 (4th Cir. 1989) ("[T]he right of removal conferred by § 1442(a)(1) is to be broadly construed.").

B. The Plaintiffs' Motion

The Plaintiffs contend that the Defendants have not raised a colorable federal defense because (1) the absence of warnings on their asbestos products violated Military Specifications, (2) the Defendants failed to disclose asbestos hazards to the Coast Guard, and (3) the Defendants have not shown that the Coast Guard had equal knowledge of the hazards. ECF No. 90-1 at 9-14. The Defendants contend that Hopeman has raised a colorable federal defense because it supplied marinite panels in accordance with Coast Guard specifications. ECF No. 94 at 8, 10-11.[13] The Defendants further contend that marinite was approved for use by the Navy and Coast Guard with knowledge that it contained asbestos, and the Coast Guard "had some level of

---

[13] Removal under the federal officer removal statute is proper when one defendant meets the statute's requirements. *See Joyner*, 2013 WL 877125, at *2 n.4.

8

knowledge of the hazards associated with the installation of an asbestos-containing product." ECF No. 94 at 8-11.

To establish a federal contractor defense in a failure to warn case, the defendant must show: "(1) the government exercised its discretion and approved certain warnings for the products; (2) the warnings provided by the contractor conformed to the federal specifications; and (3) the contractor warned the government about dangers known to the contractor but not to the government."[14] *Joyner*, 2013 WL 877125, at *7 (*citing Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996)). Warnings to the government are not required when the government agency "knew as much or more" about the danger than the contractor. *See, e.g., Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1216 (3d Cir. 1989); *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 951 (4th Cir. 1989) (federal contractor defense applied despite contractor's

---

[14] In a design defect case, in contrast, the federal contractor defendant must show that: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512, 108 S. Ct. 2510, 101 L.Ed.2d 442 (1988). Here, the Plaintiffs' complaint alleges "theories of product liability and negligence based on [the] Defendants' failure to provide adequate warnings of their products' dangerous propensities." ECF No. 2 at 14.

failure to warn because the record revealed that the Navy already had "full knowledge of the danger").

Although the Defendants bear the burden of showing that removal is proper, *Md. Stadium Auth.*, 407 F.3d at 260, here, evidence about warnings required by the Navy or Coast Guard was supplied by the Plaintiffs, see ECF Nos. 90-5 through 90-10. The 1943 Safety Report provided by the Defendants noted that workers exposed to asbestos by "covering pipes" must wear respiratory protective equipment, ECF No. 94-7 at 9, but that is irrelevant to whether the Coast Guard approved certain warnings. Thus, the Defendants have not met their burden on the first prong of the colorable federal defense test.

The Defendants have also failed to meet their burden on the second prong. The Plaintiffs' evidence shows that from 1936 to 1957, the Navy relied on suppliers to provide safety precautions. See ECF Nos. 90-6 at 1, 15; 90-8 at 2.[15] However, beginning in 1957--and during the time Sroka worked for the Coast Guard at Curtis Bay--the Navy required "emphatics," such as "CAUTION," or "WARNING," on parts lists containing hazardous products, but continued to rely on manufacturers' commercial manuals when they were "roughly equivalent" to Military

---

[15] In 1956, the Navy issued its ULP. ECF No. 90-5 at 2. The ULP did not apply to manufacturers' labels, however, because manufacturers were expected to abide by the Manufacturing Chemists' Association's Warning Labels Guide. *Id.*

10

Specifications. ECF No. 90-10 at 2. Although the Baker Affidavit asserts--in a conclusionary fashion--that Hopeman's products met Military Specifications, the Defendants point to Hopeman's compliance with specifications about product composition, type, color, and size to show that it has a colorable federal defense. ECF Nos. 8 at 6-7; 94 at 8; 94-2 at 2, 15-16; 95-3. Oddly--in a failure to warn case--the Defendants have not submitted evidence that Hopeman's products contained the "emphatics" required by the Military Specifications, that its commercial manuals provided "roughly equivalent" warnings, or that it provided--or attempted to provide--any warnings.

Nonetheless, the Defendants urge this Court to deny remand as it did in *Citrano v. John Crane-Houdaille, Inc.*, 1 F. Supp. 3d (D. Md. 2014), citing the "substantially similar issues" that case presented. ECF No. 94 at 2. There, however, General Electric's ("GE's") evidence established that the Navy "exert[ed] close control over communications provided by GE," GE would not have been permitted to affix warnings "unless directed by the Navy," and had GE included "information in its manuals not expressly called for by the Navy, the Navy would have rejected the manual." 1 F. Supp. 3d at 468 (internal quotation marks omitted). In contrast here, the Plaintiffs' evidence suggests that the Coast Guard issued sparse warning

specifications; yet, the Defendants provided no evidence of compliance with those minimum requirements. *Compare Joyner*, 2013 WL 877125, at *7-*8 (Rear Admiral swore that the Navy had "precise specifications" for any communications accompanying equipment for Navy ships and that defendant conformed to the specifications); *Nesbiet v. Gen. Elec. Co.*, 399 F. Supp. 2d 205, 211-13 (S.D.N.Y. 2005) (GE's affidavit established Navy control over the content of warnings--and the Navy's likely rejection of any equipment with warnings that deviated from its specifications).

As to the third prong of the colorable federal defense test, the Defendants assert that the Baker and Lemley Affidavits, and its exhibits four through six, show that "the Coast Guard had some level of knowledge of the hazards associated with the installation of an asbestos-containing product." ECF No. 94 at 8. Assuming, *arguendo*, that were true, the burden is on the Defendants to show more than that the government merely had "some knowledge" of asbestos dangers; rather, the Defendants must show that the government knew as much or more than Hopeman did. *See Joyner*, 2013 WL 877125, at *7; *Ramey*, 874 F.2d at 951.

Neither the Baker nor the Lemley Affidavit addresses the relative degree to which the Coast Guard was aware of the dangers posed by asbestos products. *See* ECF Nos. 94-2 at 1-2;

94-4. The Lemley Affidavit explains the process by which asbestos was tested or approved for use, but from this it does not follow that the Coast Guard knew about the dangers asbestos posed to workers. Exhibits four and five are Coast Guard exhibit lists from 1968 and 1972, respectively, which merely show that asbestos-containing marinate was an approved product. *See* ECF Nos. 94-5 at 4; 94-6 at 4. Exhibit Six--the 1943 Safety Report--recognizes asbestosis as a "common" industrial disease, and recommends segregating jobs involving asbestos dust and "[p]eriodic medical examinations" for workers. ECF No. 94-7 at 10, 13. Taken alone, however, Exhibit Six is insufficient to have discharged Hopeman's duty under the third prong. *See, e.g., Joyner*, 2013 WL 877125, at *7-*8 (defendant presented colorable federal defense to failure to warn claim by alleging, *inter alia*, that the "the Navy 'possessed knowledge regarding the hazards of asbestos equal to or superior to its equipment suppliers'"); *Nesbiet*, 399 F. Supp. 2d at 212 (finding Betts's declaration that Navy knowledge of asbestos risks was "state-of-the-art" sufficient to show that "the Navy would have known of any dangers that were known to GE").

Even broadly construing the right of removal under the federal officer removal statute, *Kolibash*, 872 F.2d at 576, the Defendants have not raised a colorable federal defense to the Plaintiffs' failure to warn claims, *see McCurdy v. John Crane-*

*Houdaille, Inc.*, No. CIV. WDQ-07-2681, 2013 WL 3155445, at *4 (D. Md. June 19, 2013) (remanding suit when removing defendant "submitted no affidavits explaining the Navy's procedures about warnings or the extent of its own or the Navy's knowledge of the dangers of asbestos," and provided no "exhibits indicat[ing] that it gave any warnings or that the government knew more about the dangers than it did"). Thus, the Court need not address whether the "causal connection" element is met. *See Pack*, 857 F. Supp. at 28 ("A defendant who satisfies [both] elements . . . gains access to federal court . . . ."). Removal was improper under § 1442(a), and the motion to remand will be granted.[16]

III. Conclusion

For the reasons stated above, the Plaintiffs' motion will be granted.

_2/24/15_  
Date

_William D. Quarles, Jr._  
United States District Judge

---

[16] The Defendants assert that, "to the extent [the Plaintiffs' motion to remand] is based on any "defect" other than lack of subject matter jurisdiction, the Plaintiffs' must be denied as untimely." ECF No. 94 at 5. Under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." Here, the Plaintiffs' motion is not based on any procedural defect, but on the Court's lack of subject matter jurisdiction. *See* ECF Nos. 90 at 1 ("federal officer jurisdiction is lacking in this case"); 101 at 2. Thus, the Plaintiffs' motion was not untimely.